DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which denied the petition of appellant, James R. Salter, to vacate or set aside his sentence pursuant to R.C.2953.21. From that judgment, appellant raises the following assignment of error:
 "INEFFECTIVE ASSISTANCE OF COUNSEL CAUSED APPELLANT TO ENTER A GUILTY PLEA WITHOUT ADEQUATE INFORMATION WHICH, HAD IT BEEN PROVIDED HIM, WOULD HAVE RESULTED IN A PLEA OF NOT GUILTY AND A TRIAL ON THE ISSUES."
On April 19, 1996, appellant was indicted and charged with one count of felonious assault against a police officer, in violation of R.C. 2903.11(A) (2), a first degree felony, and one count of failing to comply with the lawful order of a police officer, in violation of R.C. 2921.33.1(B) and (C) (2), a fourth degree felony. The indictment arose out of an incident that occurred on April 10, 1996. On that day, officers of the Erie Township Police Department attempted to pull over appellant's automobile to question appellant about a robbery. Appellant, however, took off, initiating a high-speed chase. Ultimately, officers of the Toledo Police Department became involved in the chase and apprehended appellant. Prior to his apprehension, appellant pulled his car alongside a fence and appeared to have stopped. However, when Officer Swartz of the Toledo Police Department exited his patrol vehicle, appellant slammed his car into the Toledo Police cruiser. Officer Swartz avoided injury by diving back into his cruiser.
On April 23, 1996, appellant appeared in court for an indigency hearing at which attorney Ann Baronas was appointed to represent him. Thereafter, appellant entered a plea of not guilty to the charges and Baronas filed a request for discovery which, in pertinent part, requested permission to inspect and copy any photographs in the custody of the state which were material to the preparation of the defense and which the state may intend to use as evidence at the trial.
The case was scheduled for trial on August 6, 1996. On that day, however, appellant withdrew his plea of not guilty and entered a plea of guilty to one count of second degree felonious assault in violation of R.C. 2903.11(A) (2), a lesser included offense of the first degree felonious assault of a police officer charged in the first count of the indictment. The court then engaged appellant in the following colloquy:
 "THE COURT: Now, I would like you to tell me, Mr. Salter, what you did on April 10, 1996, here in Lucas County, Ohio, that caused this charge of Felonious Assault to be filed against you?
 "THE DEFENDANT: I was involved in Lucas County in a car chase. It went throughout the City, and ended up off of Matzinger Road in a private parking lot.
"THE COURT: That's in the City of Toledo?
"THE DEFENDANT: City of Toledo.
"THE COURT: Lucas County, Ohio?
 "THE DEFENDANT: Correct. And at that time my car struck the police officer's car.
 "THE COURT: Now, did you attempt to cause harm — physical harm to the police officer by the use of your motor vehicle?
"THE DEFENDANT: I didn't think that I was —
"THE COURT: You didn't think that you were?
 "THE DEFENDANT: — trying to cause harm to the police officer.
"THE COURT: Then perhaps —
"MR. WEGLIAN: Your Honor, I have photographs that show —
 "THE COURT: Let me ask this. What would the evidence be on behalf of the State of Ohio if this case proceeded to trial, with regard to the elements that the Defendant did knowingly attempt to cause physical harm to another by means of this motor vehicle?
 "MR. WEGLIAN: Your Honor, the evidence that — the evidence that the State would have adduced was that he was involved in the State of Michigan. His prior burglary in the State of Michigan.
"* * *
 "And then the elements of the Toledo Police Department took up a pursuit when he entered in to the east side of Toledo.
 "The pursuit continued at a high-speed chase throughout a goodly portion of the City, eventually ending up at Matzinger Road, as this Defendant indicated.
 "At that time, the police officers pulled astride of the Defendant's vehicle and the Defendant appeared to have stopped his vehicle. In fact, two of the officers and one of the additional crews — not the vehicle that was struck — noted that the Defendant opened the door to his vehicle.
 "Officer Swartz began to get out of the police car, at which time the driver deliberately threw the car into gear and slammed his car into the Toledo Police cruiser.
 "Officer Swartz had to dive back into the car to avoid being personally injured by this vehicle.
"* * *
 "THE COURT: And that car was struck while Swartz was in the car?
"MR. WEGLIAN: That's correct, Your Honor.
 "THE COURT: Do you dispute that that's what the evidence would show, Mr. Salter?
"THE DEFENDANT: No.
 "THE COURT: All right. You are tendering a plea of guilty here, and you say you are guilty. You are admitting that you did what you are charged with doing in a lesser-included offense.
 "And one of the things that the State would have to prove if the case went to trial, is that you did — knowingly attempted to cause physical harm to Mr. Swartz by means of a car. Did you do that?
 "THE DEFENDANT: I didn't try to hit the officer, no sir." (Emphasis added.)
The court then determined that the more appropriate plea for appellant to make would be a plea entered pursuant to NorthCarolina v. Alford (1970), 400 U.S. 25. After the court explained to appellant the circumstances of an Alford plea, appellant agreed that was the type of plea that he wished to enter and he did enter that plea.
Subsequently, appellant was sentenced to six to fifteen years incarceration and, at the request of the state, the courtnolled the second count of the indictment. Appellant did not appeal his conviction and sentence.
On March 17, 1997, appellant filed a motion to vacate or set aside his sentence pursuant to R.C. 2953.21. Appellant's claims both focused on the existence of photographs of the crime scene that had been taken by an officer of the Toledo Police Department. In his first claim, appellant alleged that he had been denied the effective assistance of trial counsel in that counsel had not informed him of or shown him photos of the crime scene prior to his entering the Alford plea. He asserted that the photos proved that the accident could not have happened as alleged by the state and that Baronas was ineffective in failing to properly investigate the case. In his second claim, appellant asserted that the photos proved that the state's version of the accident was false and that the state therefore used false or perjured evidence in charging him as it did. The state responded to the petition with a motion to dismiss and a motion for summary judgment. In findings of fact and conclusions of law filed on February 4, 1998, the trial court concluded that, through his affidavit, appellant had raised a genuine issue of material fact regarding whether he had been denied the effective assistance of counsel. The court noted that the state had not proffered any evidence to rebut appellant's assertions that his attorney told him there were no photos depicting the crime scene and that he entered his guilty plea based on his attorney's representation that no evidence existed to support his claim of innocence. As to appellant's second claim for relief, however, the court determined that appellant had failed to submit any evidence in support of his claim that the state had used false or perjured evidence against him. Accordingly, the court held that appellant was entitled to a hearing on his first claim for relief, but granted the state summary judgment as to appellant's second claim for relief.
The case proceeded to a hearing at which the following evidence was presented.
Chris Hammye, an accident investigator for the Toledo Police Department, established that photographs of the accident scene were taken immediately following the accident and identified pictures submitted by appellant as those photographs. He further testified that although he did not witness the accident, the cars were not moved prior to his taking the photos. Finally, he testified that normally it takes ten to fifteen days for negatives to be developed after he turns them in and so the pictures of the accident scene which he took on April 10, 1996 would have been available in August 1996. He did not, however, know when these particular negatives were developed.
Mike Myers, an accident investigator hired by appellant to evaluate the photos, also testified at the hearing below. Myers stated that in his opinion, the police cruiser ran into appellant's vehicle. His opinion was based on his evaluation of six of the photos that depicted the two vehicles as they were immediately following the accident. Myers stated that given the angles at which the vehicles were touching each other, and given the dents and marks on the cars, it appeared that the police cruiser ran into appellant's car. However, he further admitted that he never inspected the actual cars themselves and did not know if the dents and marks were on the cars prior to the accident. He also could not say if the wheels of the vehicles had been turned after the accident into the positions depicted in the photographs.
Ann Baronas testified regarding her representation of appellant. She stated that while she did not receive the photos from the state until shortly before the trial, she did discuss the photos and the police reports with appellant and she stated that his file reflected that discussion. She further testified that she met with appellant several times prior to the trial, attempted to locate the person who was in appellant's car with him at the time of the accident, and attempted to access a videotape of the accident scene from a local television station. She did this upon appellant's insistence that such a videotape existed. However, no one from the station responded to the subpoena issued regarding the alleged videotape. She further testified about her meetings with appellant and his insistence that he never hit the police cruiser but that the cruiser ran into him. Baronas stated that they had discussed the possibility of hiring a mechanic as an expert witness to testify regarding appellant's assertion that he could not have hit the police cruiser because his car was out of gas. However, after discussing the issue with a mechanic she learned that because gasoline evaporates it would be impossible to tell if appellant's car had run out of gas in April 1996. With regard to the photos, Baronas testified that, in her opinion, they were consistent with the police officers' reports as to how the accident occurred, i.e., that appellant ran into the police cruiser rather than vice versa.
Finally, appellant testified on his own behalf. Appellant admitted that Baronas had discussed the photos with him prior to the date that he entered his plea but stated that he did not actually see the photos until December 1996 when he obtained his file from Baronas. He also denied ever hearing the word "photographs" mentioned at the plea hearing. He then testified that when he saw the photos for the first time, he believed that they showed that he did not run into the police cruiser. Based on this belief, appellant asked his family to contact a private investigator, which they did. Appellant testified that based on the opinion of that investigator, Bill Wayne, he filed his motion for postconviction relief alleging that evidence existed that proved that the crime charged did not occur the way the state alleged. He further testified that if he had received these photos prior to August 6, 1996, and had been able to discuss them with an expert, he would not have entered the Alford plea and would have taken his case to trial. Finally, appellant testified that he decided to plead guilty to a lesser offense in order to limit his maximum potential prison sentence from twenty-five years to fifteen years.
On February 2, 1999, the trial court issued findings of fact and conclusions of law, denying appellant's petition for postconviction relief. Specifically, the court found that the evidence established that appellant's claim that he had been misinformed by his attorney that there were no photos showing the crime scene was false. The court further found the evidence to establish that appellant's trial counsel fully investigated the case against appellant and reviewed it with him. Finally, the court found that the evidence offered by appellant to establish that he was prejudiced by his counsel's alleged ineffectiveness was not credible. Accordingly, the court concluded that appellant had failed to prove that his counsel's performance fell below an objective standard of reasonable representation or that there was a reasonable probability that, but for his counsel's alleged unprofessional errors, the result of the proceedings would have been different. It is from this judgment that appellant now appeals.
In his sole assignment of error, appellant asserts that the trial court erred in finding that he was not denied the effective assistance of trial counsel. Essentially, appellant contends that the trial court's findings were against the manifest weight of the evidence.
Postconviction relief proceedings are civil in nature.State v. Milanovich (1975), 42 Ohio St.2d 46, 49. When an evidentiary hearing is held on a motion to vacate a sentence, the trial court is the trier of fact. State v. Williams (Dec. 24, 1998), Trumbull App. No. 97-T-0148, unreported. Accordingly, it is the trial court that determines the weight to be given evidence and the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. In determining whether a trial court's judgment is against the manifest weight of the evidence, an appellate court:
 "* * * `reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weight heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
In the proceedings below, appellant asserted that his trial counsel was ineffective for failing to bring the photographs to his attention prior to the date of trial and in failing to investigate their significance.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court held that to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a two-part test must be satisfied. First, it must be shown that "counsel's performance fell below an objective standard of reasonableness." Id. at 688. Second, it must be shown that counsel's deficient performance prejudiced the defendant, i.e, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Supreme Court of Ohio has repeatedly followed this two-part test in determining the issue of ineffective assistance of counsel. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. at 142 quoting Strickland, supra at 689. Ohio presumes a licensed attorney is competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
We have thoroughly reviewed the evidence submitted at the hearing below and conclude that the judgment was not against the manifest weight of the evidence. Appellant's trial counsel investigated his case and informed him of the existence of the photos. Indeed, appellant acknowledged at the hearing that he was aware of the existence of the photographs. Appellant's trial counsel then attempted to build a defense based on appellant's claim that the police cruiser ran into his car. Nevertheless, her attempts to involve a mechanic as an expert witness and her attempt to locate a television videotape of the accident scene were not successful. Accordingly, she recommended that appellant accept the Alford plea. In accepting that plea, appellant specifically stated on the record that he ran into the police cruiser. We fail to see how trial counsel's conduct rises to the level of unprofessional conduct demanded by Strickland. Moreover, appellant's expert witness at the hearing below was unable to establish that the police cruiser ran into appellant. Accordingly, we cannot say that but for counsel's alleged unprofessional errors, the outcome of the original proceeding would have been different. Appellant's sole assignment of error is not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
MELVIN L. RESNICK, J.
 _______________________________ JUDGE
 JAMES R. SHERCK, J.
 _______________________________ JUDGE
 MARK L. PIETRYKOWSKI, J.
 _______________________________ JUDGE
CONCUR.